No. pages 17

THOMAS E. MAY

CHAPTER 7 TRUSTEE

5098 FOOTHILLS BLVD. 3-484

ROSEVILLE, CA 95747

(916) 740-4329

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

Sacramento Division

In re:
MILES JR., THEODORE J.

,Debtor

CASE NO. 10-32740-B-7

DCN: TEM-01
DATE: Feb. 8, 2011

TIME: 9:30 a.m.
DEPT: C, Courtroom 35, Sixth Floor
JUDGE: CHRISTOPHER M. KLEIN

**TRUSTEE'S MOTION TO SELL THE ESTATE'S INTEREST IN REAL PROPERTY**

Thomas E. May, Bankruptcy Trustee herein, respectfully represents:

1. MILES JR., THEODORE J. ("Debtor") filed a Chapter 7 petition on 05/14/10.

2. Thomas E. May has been appointed the Chapter 7 Trustee herein.

3. The Debtor has listed in his amended bankruptcy schedules, Schedule A, an interest in a residential lot at 10371 Kingsville Dr. Port Charlotte, Florida 33981 ("Real Property"), with an estimated value of $10,000.00. The Debtor has exempted on Schedule "C" of bankruptcy fillings $10,000.00 for this asset.

(1)

4. The Trustee has investigated this asset and has determined its interest in real property ("real property") as described by debtor. An interest in the property is also owned by Gina Miles, debtor's ex-spouse.

5. The Trustee believes that the property is worth $35,000.00 based on recent comparable sales, (see Addendum 1 Economics of the Sale). Given such economics after a normal Florida bare lot real estate commission of 7%, and other closing costs, an interest in the real property is worth approximately $5,601.00. The debtor has exempted $10,000.00, and the debtor's ex-spouse Gina Miles has quitclaimed her one half interests in the property (Addendum 2) to the Trustee in exchange for $12,000.00 of the proceeds from this sale, leaving a remainder of $5,601.00 as value for the estate.

6. The Trustee has received an offer (Addendum 3) from Jeremy D. & Mindy M. Faulkner ("Buyer") to purchase the property for $35,000.00. The offer is subject to any and all liens currently filed against the property. The Trustee believes that a $35,000.00 offer is in the best interest of this bankruptcy estate. This transaction is subject to overbid in the incremental amount of at least $1,000.00 or as the U.S. Bankruptcy Court directs.

7. Any escrow, title and other costing costs for this transaction shall be the responsibility of the Buyer.

**WHEREFORE**, Thomas E. May respectfully requests:

1. This Court approve the sale of the estate's interest in real property located at 10371 Kingsville Dr. Port Charlotte, Florida 33981 subject to any and all filed liens


(2)

currently filed against the real property to MILES JR., THEODORE J. for $35,000.00.

2. For such other and further relief as the court deems appropriate.

DATED: January 3, 2011

*Thomas E. May*
Chapter 7 Trustee

(3)

*Addendum 1*

```
         10-32740
    THEODORE J. MILES JR.
      9268 POLMONT WAY
    SACRAMENTO, CA 95829
```

## ECONOMICS OF SALE

Recent Opinion

| | |
|---|---:|
| Current Marketable Price | 35,000.00 |
| Less Ex Wife's release agreement | 12,000.00 |
| less selling commission of 7% | 2,450.00 |
| less property taxes owed | 4,949.00 |
| Less Debtors' Exemption | 10,000.00 |
| Probable estate equity | $5,601.00 |

Updated by Thomas E. May Trustee 12/31/10

(4)

This Instrument Prepared By:
Mary Ann Floyd
Diez and Floyd, P.A.
Attorneys at Law
737 South Indiana Avenue
Englewood, Florida 34223

Addendum 2

Parcel ID Number: 412128330003

# Quitclaim Deed

This Quitclaim Deed, Made this 22nd day of JULY, 2010, A.D., Between GINA C. MILES, a ~~single~~ MARRIED woman, of the County of Santa Cruz, State of California, grantor, and THOMAS E. MAY, as Chapter 7 Trustee of the THEODORE J. MILES, JR. CHAPTER 7 BANKRUPTCY ESTATE, whose address is: P.O. Box 1776, Elk Grove, of the County of Sacramento, State of California, grantee.

**Witnesseth** that the GRANTOR, for and in consideration of the sum of
-------------------------TEN DOLLARS ($10)----------------------- DOLLARS, and other good and valuable consideration to GRANTOR in hand paid by GRANTEE, the receipt whereof is hereby acknowledged, has granted, bargained and quitclaimed to the said GRANTEE and GRANTEE'S heirs, successors and assigns forever, the following described land, situate, lying and being in the County of Charlotte State of Florida to wit:

Lot 16, Block 4635, PORT CHARLOTTE SUBDIVISION, SECTION 87, a subdivision according to the plat thereof, recorded in Plat Book 7, Pages 20A through 20N, of the Public Records of Charlotte County, Florida.

Subject to restrictions, reservations and easements of record, if any, and taxes for the year 2010 and subsequent years.

THIS QUIT CLAIM DEED PREPARED AND EXECUTED WITHOUT BENEFIT OF TITLE SEARCH OR TITLE EXAMINATION.

GRANTOR HEREIN AFFIRMS THAT THE SUBJECT PROPERTY IS NOT HER HOMESTEAD NOR IS IT CONTIGUOUS TO HER HOMESTEAD.

**To Have and to Hold** the same together with all and singular the appurtenances thereunto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity and claim whatsoever of grantor, either in law or equity, for the use, benefit and profit of the said grantee forever.

**In Witness Whereof,** the grantor has hereunto set her hand and seal the day and year first above written.

Signed, sealed and delivered in our presence:

_Theres ~ Bober_
Printed Name: _Theresa Bober_
Witness

_David Mullen_
Printed Name: _David Mullen_
Witness

_____(Seal)
GINA C. MILES
P.O. Address: 725 Vista Montana Drive, Watsonville, CA 95076

STATE OF California
COUNTY OF ~~Santa Cruz~~ Sacramento
The foregoing instrument was acknowledged before me this 22nd day of July, 2010 by GINA C. MILES, ~~a single woman~~ DM ~~she is personally known to me or~~ DM she has produced her _CA Driver License_ as identification.

_David Mullen_
Printed Name: _David Mullen_
Notary Public

DAVID MULLEN
COMM. # 1879271
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES FEB. 6, 2014

MILES

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California
County of Sacramento

On July 22, 2010 before me, David Mullen, Notary Public
　　　DATE　　　　　　　　　　　　NAME, TITLE OF OFFICER-E.G., "JANE DOE, NOTARY PUBLIC"

personally appeared, Gina C. Miles

, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within Instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

[DAVID MULLEN / COMM. # 1879271 / NOTARY PUBLIC - CALIFORNIA / SACRAMENTO COUNTY / COMM. EXPIRES FEB. 6, 2014]

_____(SEAL)
NOTARY PUBLIC SIGNATURE

_____OPTIONAL INFORMATION_____

THIS OPTIONAL INFORMATION SECTION IS NOT REQUIRED BY LAW BUT MAY BE BENEFICIAL TO PERSONS RELYING ON THIS NOTARIZED DOCUMENT.

TITLE OR TYPE OF DOCUMENT Quitclaim Deed

DATE OF DOCUMENT July 22, 2010　　NUMBER OF PAGES 1

SIGNER(S) OTHER THAN NAMED ABOVE _____

SIGNER'S NAME _____　　SIGNER'S NAME _____

(6)

# AGREEMENT AND MUTUAL RELEASE

This agreement and mutual release is executed on the date(s) indicated below, by and between GINA C. MILES ("Gina Miles"), and THOMAS E. MAY, as Chapter 7 Trustee of the THEODORE J. MILES, JR. CHAPTER 7 BANKRUPTCY ESTATE ("Trustee") and THEODORE J. MILES, JR., individually ("Theodore J. Miles, Jr."). The parties have agreed to amicably resolve, settle and compromise all disputes and differences they have or may have arising out of facts or occurrences existing as of this date, known or unknown, which are released below. Therefore, the parties agree as follows:

1. Gina Miles agrees to immediately convey by Quit Claim Deed, all of her interests, existing or potentially existing, in the real property owned by Gina Miles and Theodore J. Miles, Jr., located in Charlotte County, Florida, specifically:

Lot 16, Block 4635, PORT CHARLOTTE SUBDIVISION, SECTION 87, a subdivision according to the plat thereof, recorded in Plat Book 7, Pages 20A through 20N, of the Public Records of Charlotte County, Florida, commonly known as 10371 Kingsville Drive, Port Charlotte, Florida 33981, Parcel Identification Number 412128330003

to Trustee for the purpose of sale by Trustee, pursuant to the laws of the State of Florida and the United States of America, including but not limited to the United States code pertaining to Chapter 7 Bankruptcy.

2. Gina Miles agrees that Trustee shall be permitted to sell the above described property from the Bankruptcy Estate at any price deemed reasonable by the Trustee and the Bankruptcy Court and that Gina Miles' share of the proceeds from that sale shall be, and shall not exceed, Twelve Thousand Dollars ($12,000.00). Such sale shall be conducted at the discretion of the Trustee.

In consideration of the above agreement, and the mutual covenants contained in this release, and the benefits to be received by each party, the receipt and sufficiency of which is acknowledged by each party, the parties do hereby remise, release, acquit, satisfy, and forever discharge one another, and their respective heirs, personal representatives, successors, assigns, employees, agents and attorneys of and from all actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, attorneys fees, expenses, contracts, controversies, agreements, promises, variances, damages, judgments, executions, claims and demands, in law or in equity, which either party ever had, now has, or may have, or which any personal representative, successor, heir or assign of either party, subsequently can, shall or may have, against the other or its heirs, personal representatives, successors, assigns, employees, agents or attorneys, for, on or by reason of any matter, cause or thing, related to the ownership of and rights in, the above described real property.

In witness, the parties have executed this agreement and mutual general release on the date(s) written below.

_Theresa Bober_
Printed Name: _Theresa Bober_
Witness to Gina C. Miles

_David Mull_
Printed Name: _David Mullen_
Witness to Gina C. Miles

GINA C. MILES

**STATE OF CALIFORNIA**
**COUNTY OF SANTA CRUZ**

(7)

SWORN TO AND SUBSCRIBED BEFORE ME this _____ day of _____, 2010, by Gina C. Miles, who is (check one) _____ personally known to me OR _____ produced _____ as identification.

_____See attached_____
Notary Public – State of California

_/s/ Thomas E. May, Trustee_
Thomas E. May, as Chapter 7 Trustee of the
Theodore J. Miles, Jr. Chapter 7 Bankruptcy Estate

_Theresa Bober_
Printed Name: Theresa Bober
Witness to Thomas E. May

_David Mullen_
Printed Name: David Mullen
Witness to Thomas E. May

STATE OF CALIFORNIA
COUNTY OF SACRAMENTO

SWORN TO AND SUBSCRIBED BEFORE ME this _____ day of _____, 2010, by Thomas E. May, who is (check one) _____ personally known to me OR _____ produced _____ as identification.

_____See attached_____
Notary Public – State of California

_Theresa Bober_
Printed Name: Theresa Bober
Witness to Theodore J. Miles, Jr. / Thomas E May, Trustee

_David Mullen_
Printed Name: David Mullen
Witness to Theodore J. Miles, Jr. / Thomas E. May Trustee

Theodore J. Miles, Jr.

_Thomas E. May Trustee for Estate of Theodore Miles Jr._

STATE OF CALIFORNIA
COUNTY OF _____

SWORN TO AND SUBSCRIBED BEFORE ME this _____ day of _____, 2010, by Theodore J. Miles, Jr., who is (check one) _____ personally known to me OR _____ produced _____ as identification.

_____
Notary Public – State of California

Page 8 of 17

# Jurat

State of California
County of  Sacramento

Subscribed and sworn to (or affirmed) before me on this
22nd day of July, 20 10, by
Gina C. Miles
_____,
proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Notary Public Signature

DAVID MULLEN
COMM. # 1879271
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES FEB. 6, 2014

(seal)

## OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED

Agreement and Mutual Release
Title of Document

2
Number of Pages

_____
Document Date

_____
Other Information

(9)

# Addendum 3

**Vacant Land Contract**
FLORIDA ASSOCIATION OF REALTORS®

**PARTIES AND DESCRIPTION OF PROPERTY**

1. **SALE AND PURCHASE:** _____OWNER(S) OF RECORD_____ ("Seller")
and _____JEREMY D. & MINDY M. FAULKNER_____ ("Buyer")
agree to sell and buy on the terms and conditions specified below the property ("Property") described as:
Address: __10371 KINGSVILLE DRIVE, PORT CHARLOTTE, FL 33981__
Legal Description: __PCH 0087 4635 0016__
__PORT CHARLOTTE SEC 87 BLOCK 4635 LOT 16__

Including all improvements and the following additional property: __VACANT LAND__

**PRICE AND FINANCING**

2. **PURCHASE PRICE:** $____35,000.00____ payable by Buyer in U.S. funds as follows:

(a) $_____ Deposit received (checks are subject to clearance) on _____, _____ by
_____ for delivery to __GOLD CREST TITLE__ ("Escrow Agent")
*Signature* / *Name of Company*
(Address of Escrow Agent) __19700 COCHRAN BLVD, UNIT B, P.C. FL 33948__
(Phone # of Escrow Agent) __941-624-4115__

(b) $____1,000.00____ Additional deposit to be delivered to Escrow Agent by _____, _____
or __3__ days from Effective Date (10 days if left blank).

(c) _____ Total financing (see Paragraph 3 below) (express as a dollar amount or percentage)

(d) $_____ Other: _____

(e) $____34,000.00____ Balance to close (not including Buyer's closing costs, prepaid items and prorations). All funds paid at closing must be paid by locally drawn cashier's check, official check or wired funds.

☐ (f) (complete only if purchase price will be determined based on a per unit cost instead of a fixed price) The unit used to determine the purchase price is ☐ lot ☐ acre ☐ square foot ☐ other (specify: _____)
prorating areas of less than a full unit. The purchase price will be $_____ per unit based on a calculation of total area of the Property as certified to Buyer and Seller by a Florida-licensed surveyor in accordance with Paragraph 8(c) of this Contract. The following rights of way and other areas will be excluded from the calculation: _____

3. **CASH/FINANCING:** (Check as applicable) ☒ (a) Buyer will pay cash for the Property with no financing contingency.
☐ (b) This Contract is contingent on Buyer qualifying and obtaining the commitment(s) or approval(s) specified below (the "Financing") within _____ days from Effective Date (if left blank then Closing Date or 30 days from Effective Date, whichever occurs first) (the "Financing Period"). Buyer will apply for Financing within _____ days from Effective Date (5 days if left blank) and will timely provide any and all credit, employment, financial and other information required by the lender. If Buyer, after using diligence and good faith, cannot obtain the Financing within the Financing Period, either party may cancel this Contract and Buyer's deposit(s) will be returned after Escrow Agent receives proper authorization from all interested parties.
☐ (1) New Financing: Buyer will secure a commitment for new third party financing for $_____ or _____% of the purchase price at the prevailing interest rate and loan costs based on Buyer's creditworthiness. Buyer will keep Seller and Broker fully informed of the loan application status and progress and authorizes the lender or mortgage broker to disclose all such information to Seller and Broker.
☐ (2) Seller Financing: Buyer will execute a ☐ first ☐ second purchase money note and mortgage to Seller in the amount of $_____, bearing annual interest at _____% and payable as follows: _____

The mortgage, note, and any security agreement will be in a form acceptable to Seller and will follow forms generally accepted in the county where the Property is located; will provide for a late payment fee and acceleration at the mortgagee's

Buyer (__/__) (____) and Seller (__/__) (____) acknowledge receipt of a copy of this page, which is Page 1 of 7 Pages.
VAC-9 Rev. 4/07 © 2007 Florida Association of Realtors® All Rights Reserved

51  option if **Buyer** defaults; will give **Buyer** the right to prepay without penalty all or part of the principal at any time(s) with
52  interest only to date of payment; will be due on conveyance or sale; will provide for release of contiguous parcels, if
53  applicable; and will require **Buyer** to keep liability insurance on the Property, with **Seller** as additional named insured. **Buyer**
54  authorizes **Seller** to obtain credit, employment and other necessary information to determine creditworthiness for the
55  financing. **Seller** will, within 10 days from Effective Date, give **Buyer** written notice of whether or not **Seller** will make the loan.
56* ☐ (3) **Mortgage Assumption: Buyer** will take title subject to and assume and pay existing first mortgage to _____
57*
58* LN# _____ in the approximate amount of $_____ currently payable at
59* $_____ per month including principal, interest, ☐ taxes and insurance and having a ☐ fixed ☐ other
60* (describe) _____
61* interest rate of _____% which ☐ will ☐ will not escalate upon assumption. Any variance in the mortgage will be
62  adjusted in the balance due at closing with no adjustment to purchase price. **Buyer** will purchase **Seller's** escrow
63* account dollar for dollar. If the lender disapproves **Buyer**, or the interest rate upon transfer exceeds _____% or the
64* assumption/transfer fee exceeds $_____, either party may elect to pay the excess, failing which this
65  agreement will terminate and **Buyer's** deposit(s) will be returned.

66                                              CLOSING *ON OR BEFORE FEB. 23, 2011* /tm/
67  **4. CLOSING DATE; OCCUPANCY:** This Contract will be closed and the deed and possession delivered on
68* \_\_\_\_W/IN 15 DAYS /tm/\_\_\_\_ ("Closing Date"). Unless the Closing Date is specifically extended by the **Buyer** and **Seller** or
69  by any other provision in this Contract, the Closing Date shall prevail over all other time periods including, but not limited to,
70  financing and feasibility study periods. If on Closing Date insurance underwriting is suspended, **Buyer** may postpone closing up to
71  5 days after the insurance suspension is lifted. If this transaction does not close for any reason, **Buyer** will immediately return all
72  **Seller**-provided title evidence, surveys, association documents and other items.

73  **5. CLOSING PROCEDURE; COSTS:** Closing will take place in the county where the Property is located and may be conducted
74  by mail or electronic means. If title insurance insures **Buyer** for title defects arising between the title binder effective date and
75  recording of **Buyer's** deed, closing agent will disburse at closing the net sale proceeds to **Seller** (in local cashier's checks if **Seller**
76  requests in writing at least 5 days prior to closing) and brokerage fees to Broker as per Paragraph 17. In addition to other expenses
77  provided in this Contract, **Seller** and **Buyer** will pay the costs indicated below.
78      **(a) Seller Costs:**
79      Taxes on the deed
80      Recording fees for documents needed to cure title
81      Title evidence (if applicable under Paragraph 8)
82* Other: _____
83      **(b) Buyer Costs:**
84      Taxes and recording fees on notes and mortgages
85      Recording fees on the deed and financing statements
86      Loan expenses
87      Lender's title policy at the simultaneous issue rate
88      Inspections
89      Survey and sketch
90      Insurance
91* Other: _____
92      **(c) Title Evidence and Insurance: Check (1) or (2):**
93* ☒ (1) The title evidence will be a Paragraph 8(a)(1) owner's title insurance commitment. ☐ **Seller** will select the title agent and
94*     will pay for the owner's title policy, search, examination and related charges or ☒ **Buyer** will select the title agent and pay for
95*     the owner's title policy, search, examination and related charges or ☐ **Buyer** will select the title agent and **Seller** will pay for
96      the owner's title policy, search, examination and related charges.
97* ☐ (2) **Seller** will provide an abstract as specified in Paragraph 8(a)(2) as title evidence. ☐ **Seller** ☐ **Buyer** will pay for the
98      owner's title policy and select the title agent. **Seller** will pay fees for title searches prior to closing, including tax search and
99      lien search fees, and **Buyer** will pay fees for title searches after closing (if any), title examination fees and closing fees.
100     **(d) Prorations:** The following items will be made current and prorated as of the day before Closing Date: real estate taxes,
101     interest, bonds, assessments, leases and other Property expenses and revenues. If taxes and assessments for the current
102     year cannot be determined, the previous year's rates will be used with adjustment for any exemptions. **PROPERTY TAX
103     DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY TAXES AS THE
104     AMOUNT OF PROPERTY TAXES THAT BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO
105     PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE
106     PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING
107     VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER INFORMATION.**
108     (e) **Special Assessment by Public Body:** Regarding special assessments imposed by a public body, **Seller** will pay (i) the full
109     amount of liens that are certified, confirmed and ratified before closing and (ii) the amount of the last estimate of the assessment

110 Buyer (AT) (tm) and Seller (__) (__) acknowledge receipt of a copy of this page, which is Page 2 of 7 Pages.
    VAC-9  Rev. 4/07  © 2007 Florida Association of REALTORS®  All Rights Reserved
                                                    (11)

111 if an improvement is substantially completed as of Effective Date but has not resulted in a lien before closing, and **Buyer** will pay
112* all other amounts. If special assessments may be paid in installments ☒ **Buyer** ☐ **Seller** (if left blank, **Buyer**) shall pay installments
113 due after closing. If **Seller** is checked, **Seller** will pay the assessment in full prior to or at the time of closing. Public body does
114 not include a Homeowner Association or Condominium Association.
115 **(f) Tax Withholding:** If **Seller** is a "foreign person" as defined by FIRPTA, Section 1445 of the Internal Revenue Code
116 requires **Buyer** to withhold 10% of the amount realized by the **Seller** on the transfer and remit the withheld amount to the
117 Internal Revenue Service (IRS) unless an exemption applies. The primary exemptions are (1) **Seller** provides **Buyer** with an
118 affidavit that **Seller** is not a "foreign person", (2) **Seller** provides **Buyer** with a Withholding Certificate providing for reduced or
119 eliminated withholding, or (3) the gross sales price is $300,000 or less, **Buyer** is an individual who purchases the Property to
120 use as a residence, and **Buyer** or a member of **Buyer's** family has definite plans to reside at the Property for at least 50% of
121 the number of days the Property is in use during each of the first two 12 month periods after transfer. The IRS requires **Buyer**
122 and **Seller** to have a U.S. federal taxpayer identification number ("TIN"). **Buyer** and **Seller** agree to execute and deliver as
123 directed any instrument, affidavit or statement reasonably necessary to comply with FIRPTA requirements including applying
124 for a TIN within 3 days from Effective Date and delivering their respective TIN or Social Security numbers to the Closing Agent.
125 If **Seller** applies for a withholding certificate but the application is still pending as of closing, **Buyer** will place the 10% tax in
126 escrow at **Seller's** expense to be disbursed in accordance with the final determination of the IRS, provided **Seller** so requests
127 and gives **Buyer** notice of the pending application in accordance with Section 1445. If **Buyer** does not pay sufficient cash at
128 closing to meet the withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the
129 requirement. **Buyer** will timely disburse the funds to the IRS and provide **Seller** with copies of the tax forms and receipts.
130 **(g) 1031 Exchange:** If either **Seller** or **Buyer** wishes to enter into a like-kind exchange (either simultaneously with closing or
131 after) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party will cooperate in all reasonable respects
132 to effectuate the Exchange including executing documents; provided, however, that the cooperating party will incur no liability
133 or cost related to the Exchange and that the closing shall not be contingent upon, extended or delayed by the Exchange.

## PROPERTY CONDITION

135 **6. LAND USE: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition, with conditions
136 resulting from **Buyer's** Inspections and casualty damage, if any, excepted. **Seller** will maintain the landscaping and
137 grounds in a comparable condition and will not engage in or permit any activity that would materially alter the Property's
138 condition without the **Buyer's** prior written consent.
139 **(a) Flood Zone: Buyer** is advised to verify by survey, with the lender and with appropriate government agencies which
140 flood zone the Property is in, whether flood insurance is required and what restrictions apply to improving the Property and
141 rebuilding in the event of casualty.
142 **(b) Government Regulation: Buyer** is advised that changes in government regulations and levels of service which
143 affect **Buyer's** intended use of the Property will not be grounds for canceling this Contract if the Feasibility Study
144 Period has expired or if **Buyer** has checked choice (c)(2) below.
145 **(c) Inspections:** *(check (1) or (2) below)*
146* ☐ **(1) Feasibility Study: Buyer** will, at **Buyer's** expense and within _____ days from Effective Date ("Feasibility Study
147* Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion, for _____
148* _____ use. During the Feasibility Study Period, **Buyer** may conduct a Phase I environmental
149 assessment and any other tests, analyses, surveys and investigations ("Inspections") that **Buyer** deems necessary to
150 determine to **Buyer's** satisfaction the Property's engineering, architectural and environmental properties; zoning and
151 zoning restrictions; subdivision statutes; soil and grade; availability of access to public roads, water, and other utilities;
152 consistency with local, state and regional growth management plans; availability of permits, government approvals, and
153 licenses; and other Inspections that **Buyer** deems appropriate to determine the Property's suitability for the **Buyer's**
154 intended use. If the Property must be rezoned, **Buyer** will obtain the rezoning from the appropriate government agencies.
155 **Seller** will sign all documents **Buyer** is required to file in connection with development or rezoning approvals.
156 **Seller** gives **Buyer**, its agents, contractors and assigns, the right to enter the Property at any time during the Feasibility
157 Study Period for the purpose of conducting Inspections; provided, however, that **Buyer**, its agents, contractors and
158 assigns enter the Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless
159 from losses, damages, costs, claims and expenses of any nature, including attorneys' fees, expenses and liability
160 incurred in application for rezoning or related proceedings, and from liability to any person, arising from the conduct of
161 any and all Inspections or any work authorized by **Buyer**. **Buyer** will not engage in any activity that could result in a
162 construction lien being filed against the Property without **Seller's** prior written consent. If this transaction does not
163 close, **Buyer** will, at **Buyer's** expense, (1) repair all damages to the Property resulting from the Inspections and
164 return the Property to the condition it was in prior to conduct of the Inspections, and (2) release to **Seller** all reports
165 and other work generated as a result of the Inspections.
166 **Buyer** will deliver written notice to **Seller** prior to the expiration of the Feasibility Study Period of **Buyer's**
167 determination of whether or not the Property is acceptable. **Buyer's** failure to comply with this notice requirement
168 will constitute acceptance of the Property as suitable for **Buyer's** intended use in its "as is" condition. If the Property
169 is unacceptable to **Buyer** and written notice of this fact is timely delivered to **Seller**, this Contract will be deemed
170 terminated as of the day after the Feasibility Study period ends and **Buyer's** deposit(s) will be returned after Escrow
171 Agent receives proper authorization from all interested parties.
172* ☐ **(2) No Feasibility Study: Buyer** is satisfied that the Property is suitable for **Buyer's** purposes, including being
173 satisfied that either public sewerage and water are available to the Property or the Property will be approved for the
174* **Buyer** (____) (____) and **Seller** (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 7 Pages.
VAC-9 Rev. 4/07 © 2007 Florida Association of REALTORS® All Rights Reserved

*[Handwritten note: SELLER TRUSTEE HAS NEVER SEEN PROPERTY AND HAS ZERO KNOWLEDGE OF CONDITION]*

(12)

175 installation of a well and/or private sewerage disposal system and that existing zoning and other pertinent regulations
176 and restrictions, such as subdivision or deed restrictions, concurrency, growth management and environmental
177 conditions, are acceptable to **Buyer**. This Contract is not contingent on **Buyer** conducting any further investigations.
178 **(d) Subdivided Lands:** If this Contract is for the purchase of subdivided lands, defined by Florida Law as "(a) Any
179 contiguous land which is divided or is proposed to be divided for the purpose of disposition into 50 or more lots,
180 parcels, units, or interests; or (b) Any land, whether contiguous or not, which is divided or proposed to be divided into
181 50 or more lots, parcels, units, or interests which are offered as a part of a common promotional plan.", **Buyer** may
182 cancel this Contract for any reason whatsoever for a period of 7 business days from the date on which **Buyer** executes
183 this Contract. If **Buyer** elects to cancel within the period provided, all funds or other property paid by **Buyer** will be
184 refunded without penalty or obligation within 20 days of the receipt of the notice of cancellation by the developer.

185 **7. RISK OF LOSS; EMINENT DOMAIN:** If any portion of the Property is materially damaged by casualty before closing,
186 or Seller negotiates with a governmental authority to transfer all or part of the Property in lieu of eminent domain proceedings,
187 or if an eminent domain proceeding is initiated, **Seller** will promptly inform **Buyer**. Either party may cancel this Contract
188 by written notice to the other within 10 days from **Buyer's** receipt of **Seller's** notification, failing which **Buyer** will close in
189 accordance with this Contract and receive all payments made by the government authority or insurance company, if any.

190                                                           **TITLE**
191 **8. TITLE:** Seller will convey marketable title to the Property by statutory warranty deed or trustee, personal representative
192 or guardian deed as appropriate to **Seller's** status.
193 **(a) Title Evidence:** Title evidence will show legal access to the Property and marketable title of record in **Seller** in
194 accordance with current title standards adopted by the Florida Bar, subject only to the following title exceptions, none of
195* which prevent **Buyer's** intended use of the Property as _____**RESIDENTIAL**_____: covenants, easements and
196 restrictions of record; matters of plat; existing zoning and government regulations; oil, gas and mineral rights of record if
197 there is no right of entry; current taxes; mortgages that **Buyer** will assume; and encumbrances that **Seller** will discharge at
198 or before closing. **Seller** will deliver to **Buyer Seller's** choice of one of the following types of title evidence,
199 which must be generally accepted in the county where the Property is located (specify in Paragraph 5(c) the selected
200 type). **Seller** will use option (1) in Palm Beach County and option (2) in Miami-Dade County.
201     **(1) A title insurance commitment** issued by a Florida-licensed title insurer in the amount of the purchase price and
202 subject only to title exceptions set forth in this Contract and delivered no later than 2 days before Closing Date.
203     **(2) An existing abstract of title** from a reputable and existing abstract firm (if firm is not existing, then abstract must be
204 certified as correct by an existing firm) purporting to be an accurate synopsis of the instruments affecting title to the
205 Property recorded in the public records of the county where the Property is located and certified to Effective Date.
206 However if such an abstract is not available to Seller, then a prior owner's title policy acceptable to the proposed insurer
207 as a base for reissuance of coverage. **Seller** will pay for copies of all policy exceptions and an update in a format
208 acceptable to **Buyer's** closing agent from the policy effective date and certified to **Buyer** or **Buyer's** closing agent,
209 together with copies of all documents recited in the prior policy and in the update. If a prior policy is not available to
210 Seller then (1) above will be the title evidence. Title evidence will be delivered no later than 10 days before Closing Date.
211 **(b) Title Examination:** Buyer will examine the title evidence and deliver written notice to Seller, within 5 days from receipt
212 of title evidence but no later than Closing Date, of any defects that make the title unmarketable. Seller will have 30 days
213 from receipt of **Buyer's** notice of defects ("Curative Period") to cure the defects at Seller's expense. If Seller cures the
214 defects within the Curative Period, **Seller** will deliver written notice to **Buyer** and the parties will close the transaction on
215 Closing Date or within 10 days from **Buyer's** receipt of **Seller's** notice if Closing Date has passed. If **Seller** is unable to
216 cure the defects within the Curative Period, **Seller** will deliver written notice to **Buyer** and **Buyer** will, within 10 days from
217 receipt of **Seller's** notice, either cancel this Contract or accept title with existing defects and close the transaction.
218 **(c) Survey:** Buyer may, prior to Closing Date and at **Buyer's** expense, have the Property surveyed and deliver written
219 notice to Seller, within 5 days from receipt of survey but no later than 5 days prior to closing, of any encroachments on
220 the Property, encroachments by the Property's improvements on other lands or deed restriction or zoning violations. Any
221 such encroachment or violation will be treated in the same manner as a title defect and **Buyer's** and **Seller's** obligations
222 will be determined in accordance with subparagraph **(b)** above.
223 **(d) Coastal Construction Control Line:** If any part of the Property lies seaward of the coastal construction control line as
224 defined in Section 161.053 of the Florida Statutes, Seller shall provide Buyer with an affidavit or survey as required by law
225 delineating the line's location on the Property, unless **Buyer** waives this requirement in writing. The Property being purchased
226 may be subject to coastal erosion and to federal, state, or local regulations that govern coastal property, including delineation
227 of the coastal construction control line, rigid coastal protection structures, beach nourishment, and the protection of marine
228 turtles. Additional information can be obtained from the Florida Department of Environmental Protection, including whether
229 there are significant erosion conditions associated with the shoreline of the Property being purchased.
230* ❏ Buyer waives the right to receive a CCCL affidavit or survey.

231                                                      **MISCELLANEOUS**
232 **9. EFFECTIVE DATE; TIME; FORCE MAJEURE:**
233 **(a) Effective Date:** The "Effective Date" of this Contract is the date on which the last of the parties initials or signs and
234 delivers final offer or counteroffer. **Time is of the essence for all provisions of this Contract.**
235 **(b) Time:** All time periods expressed as days will be computed in business days (a "business day" is every calendar day
236 except Saturday, Sunday and national legal holidays). If any deadline falls on a Saturday, Sunday or national legal

237* Buyer (__) (__) and Seller (__) (__) acknowledge receipt of a copy of this page, which is Page 4 of 7 Pages.
VAC-9  Rev. 4/07  © 2007 Florida Association of REALTORS®  All Rights Reserved

(13)

238 holiday, performance will be due the next business day. All time periods will end at 5:00 p.m. local time (meaning in the
239 county where the Property is located) of the appropriate day.
240 (c) **Force Majeure: Buyer** or **Seller** shall not be required to perform any obligation under this Contract or be liable to
241 each other for damages so long as the performance or non-performance of the obligation is delayed, caused or prevented
242 by an act of God or force majeure. An "act of God" or "force majeure" is defined as hurricanes, earthquakes, floods, fire,
243 unusual transportation delays, wars, insurrections and any other cause not reasonably within the control of the **Buyer** or
244 **Seller** and which by the exercise of due diligence the non-performing party is unable in whole or in part to prevent or
245 overcome. All time periods, including Closing Date, will be extended (not to exceed 30 days) for the period that the force
246 majeure or act of God is in place. In the event that such "act of God" or "force majeure" event continues beyond the 30
247 days in this sub-paragraph, either party may cancel the Contract by delivering written notice to the other and **Buyer's**
248 deposit shall be refunded.

249 **10. NOTICES:** All notices shall be in writing and will be delivered to the parties and Broker by mail, personal delivery or
250 electronic media. **Buyer's failure to deliver timely written notice to Seller, when such notice is required by this Contract,**
251 **regarding any contingencies will render that contingency null and void and the Contract will be construed as if the**
252 **contingency did not exist.** Any notice, document or item delivered to or received by an attorney or licensee (including a
253 transaction broker) representing a party will be as effective as if delivered to or by that party.

254 **11. COMPLETE AGREEMENT:** This Contract is the entire agreement between **Buyer** and **Seller**. Except for brokerage
255 agreements, no prior or present agreements will bind **Buyer, Seller** or **Broker** unless incorporated into this Contract.
256 Modifications of this Contract will not be binding unless in writing, signed or initialed and delivered by the party to be bound.
257 This Contract, signatures, initials, documents referenced in this Contract, counterparts and written modifications
258 communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten
259 or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or
260 becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. **Buyer** and **Seller** will use diligence
261 and good faith in performing all obligations under this Contract. This Contract will not be recorded in any public records.

262 **12. ASSIGNABILITY; PERSONS BOUND: Buyer** may not assign this Contract without **Seller's** written consent. The terms
263 "Buyer," "Seller," and "Broker" may be singular or plural. This Contract is binding on the heirs, administrators, executors,
264 personal representatives and assigns (if permitted) of **Buyer, Seller** and **Broker**.

265 <center>**DEFAULT AND DISPUTE RESOLUTION**</center>
266 **13. DEFAULT:** (a) **Seller Default:** If for any reason other than failure of **Seller** to make **Seller's** title marketable after diligent effort,
267 **Seller** fails, refuses or neglects to perform this Contract, **Buyer** may choose to receive a return of **Buyer's** deposit without
268 waiving the right to seek damages or to seek specific performance as per Paragraph 14. **Seller** will also be liable to Broker for
269 the full amount of the brokerage fee. (b) **Buyer Default:** If **Buyer** fails to perform this Contract within the time specified, including
270 timely payment of all deposits, **Seller** may choose to retain and collect all deposits paid and agreed to be paid as liquidated
271 damages or to seek specific performance as per Paragraph 14; and Broker will, upon demand, receive 50% of all deposits
272 paid and agreed to be paid (to be split equally among Brokers) up to the full amount of the brokerage fee.

273 **14. DISPUTE RESOLUTION:** This Contract will be construed under Florida law. All controversies, claims, and other matters in
274 question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
275 (a) **Disputes concerning entitlement to deposits made and agreed to be made:** Buyer and Seller will have 30 days from
276 the date conflicting demands are made to attempt to resolve the dispute through **mediation**. If that fails, Escrow Agent
277 will submit the dispute, if so required by Florida law, to Escrow Agent's choice of arbitration, a Florida court or the
278 Florida Real Estate Commission ("FREC"). Buyer and Seller will be bound by any resulting award, judgment or order. A
279 broker's obligation under Chapter 475, FS and the FREC rules to timely notify the FREC of an escrow dispute and timely
280 resolve the escrow dispute through mediation, arbitration, interpleader, or an escrow disbursement order, if the broker so
281 chooses, applies only to brokers and does not apply to title companies, attorneys or other escrow companies.
282 (b) **All other disputes:** Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to
283 resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding
284 arbitration in the county where the Property is located. The arbitrator may not alter the Contract terms or award any
285 remedy not provided for in this Contract. The award will be based on the greater weight of the evidence and will
286 state findings of fact and the contractual authority on which it is based. If the parties agree to use discovery, it will
287 be in accordance with the Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related
288 disputes. Any disputes with a real estate licensee named in Paragraph 17 will be submitted to arbitration only if the
289 licensee's broker consents in writing to become a party to the proceeding. This clause will survive closing.
290 (c) **Mediation and Arbitration; Expenses:** "Mediation" is a process in which parties attempt to resolve a dispute by
291 submitting it to an impartial mediator who facilitates the resolution of the dispute but who is not empowered to impose a
292 settlement on the parties. Mediation will be in accordance with the rules of the American Arbitration Association ("AAA") or
293 other mediator agreed on by the parties. The parties will equally divide the mediation fee, if any. "Arbitration" is a process in
294 which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose decision is
295 binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on by the parties.
296 Each party to any arbitration will pay its own fees, costs and expenses, including attorneys' fees, and will equally split the
297 arbitrators' fees and administrative fees of arbitration. In a civil action to enforce an arbitration award, the prevailing party to the
298 arbitration shall be entitled to recover from the nonprevailing party reasonable attorneys' fees, costs and expenses.

299 Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 5 of 7 Pages.
VAC-9 Rev. 4/07 © 2007 Florida Association of Realtors® All Rights Reserved

(14)

## ESCROW AGENT AND BROKER

**15. ESCROW AGENT:** Buyer and Seller authorize Escrow Agent to receive, deposit and hold funds and other items in escrow and, subject to clearance, disburse them upon proper authorization and in accordance with Florida law and the terms of this Contract, including disbursing brokerage fees. The parties agree that Escrow Agent will not be liable to any person for misdelivery of escrowed items to **Buyer** or **Seller**, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence. If Escrow Agent interpleads the subject matter of the escrow, Escrow Agent will pay the filing fees and costs from the deposit and will recover reasonable attorneys' fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court costs in favor of the prevailing party. All claims against Escrow Agent will be arbitrated, so long as Escrow Agent consents to arbitrate.

**16. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises **Buyer** and **Seller** to verify all facts and representations that are important to them and to consult an appropriate professional for legal advice (for example, interpreting contracts, determining the effect of laws on the Property and transaction, status of title, foreign investor reporting requirements, the effect of property lying partially or totally seaward of the Coastal Construction Control Line, etc.) and for tax, property condition, environmental and other specialized advice. Buyer acknowledges that Broker does not reside in the Property and that all representations (oral, written or otherwise) by Broker are based on **Seller** representations or public records. **Buyer agrees to rely solely on Seller, professional inspectors and governmental agencies for verification of the Property condition and facts that materially affect Property value.** Buyer and Seller respectively will pay all costs and expenses, including reasonable attorneys' fees at all levels, incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from **Buyer's** or **Seller's** misstatement or failure to perform contractual obligations. Buyer and Seller hold harmless and release Broker and Broker's officers, directors, agents and employees from all liability for loss or damage based on **(1)** Buyer's or Seller's misstatement or failure to perform contractual obligations; **(2)** Broker's performance, at Buyer's and/or Seller's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor; **(3)** products or services provided by any vendor; and **(4)** expenses incurred by any vendor. Buyer and Seller each assume full responsibility for selecting and compensating their respective vendors. This paragraph will not relieve Broker of statutory obligations. For purposes of this paragraph, Broker will be treated as a party to this Contract. This paragraph will survive closing.

**17. BROKERS:** The licensee(s) and brokerage(s) named below are collectively referred to as "Broker." **Instruction to Closing Agent:** Seller and Buyer direct closing agent to disburse at closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties and cooperative agreements between the brokers, except to the extent Broker has retained such fees from the escrowed funds. In the absence of such brokerage agreements, closing agent will disburse brokerage fees as indicated below. This paragraph will not be used to modify any MLS or other offer of compensation made by Seller or listing broker to cooperating brokers.

PHIL VAN DER HEYDEN | SOUTH GULF COVE REALTY, INC
Selling Sales Associate/License No. SL 3222304 | Selling Firm/Brokerage Fee: ($ or % of Purchase Price) 4%

GARY JENKINS | MICHAEL SAUNDERS & CO.
Listing Sales Associate/License No. _____ | Listing Firm/Brokerage fee: ($ or % of Purchase Price) _____

## ADDITIONAL TERMS

**18. ADDITIONAL TERMS:** BUYER IS AWARE THAT, AT TIME OF THIS CONTRACT, THE PROPERTY IS IDENTIFIED BY STATE & COUNTY AUTHORITIES AS BEING LOCATED IN A SCRUB JAY REVIEW AREA.

Buyer (___) (___) and Seller (___) (___) acknowledge receipt of a copy of this page, which is Page 6 of 7 Pages.
VAC-9 Rev. 4/07 © 2007 Florida Association of REALTORS® All Rights Reserved

(15)

359*
360*
361*
362*
363*
364*
365*
366*
367*
368*
369*
370*
371*
372*
373*
374*
375*

376   This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney prior to signing.

### OFFER AND ACCEPTANCE

378* (Check if applicable: ❑ Buyer received a written real property disclosure statement from Seller before making this Offer.)
379 Buyer offers to purchase the Property on the above terms and conditions. Unless this Contract is signed by Seller and a
380* copy delivered to Buyer no later than _____ ❑ a.m. ❑ p.m. on _____, _____, this offer will be
381 revoked and Buyer's deposit refunded subject to clearance of funds.

### COUNTER OFFER/ REJECTION

383* ❑ Seller counters Buyer's offer (to accept the counter offer, Buyer must sign or initial the counter offered terms and deliver a
384 copy of the acceptance to Seller. Unless otherwise stated, the time for acceptance of any counteroffers shall be 2 days from
385* the date the counter is delivered. ❑ Seller rejects Buyer's offer.

386* Date: 12-31-10          Buyer: _[signature]_
387*                        Print name: JEREMY D. FAULKNER

388* Date: 12-31-10          Buyer: _Mindy M. Faulkner_
389* Phone: _____   Print name: MINDY M. FAULKNER
390* Fax: _____     Address: _____
391* E-mail: _____

392* Date: _____    Seller: _____
393*                        Print name: _____

394* Date: _____    Seller: _____
395* Phone: _____   Print name: _____
396* Fax: _____     Address: _____
397* E-mail: _____

398* Effective Date: _____ (The date on which the last party signed or initialed and delivered the final offer or counteroffer.)

399* Buyer (__) (mm) and Seller (JU) (___) acknowledge receipt of a copy of this page, which is Page 7 of 7 Pages.

The Florida Association of Realtors and local Board/Association of Realtors make no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a Realtor. Realtor is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of Realtors and who subscribe to its Code of Ethics.
The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

VAC-9   Rev. 4/07   © 2007 Florida Association of Realtors®   All Rights Reserved

(16)

REALTOR® Association of Greater Fort Lauderdale

# Mandatory Homeowners' Association/Community Disclosure Summary

(Where membership in an Association is required)

For: _____ SOUTH GULF COVE _____
(Name of Community)

Property Address: _____ 10371 KINGSVILLE DRIVE, PORT CHARLOTTE, FL 33981 - PCH 087 4635 0016 _____

1. (CHECK ONE) YOU ( ) WILL (✓) WILL NOT BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION ("ASSOCIATION") IF YOU BUY PROPERTY IN THIS COMMUNITY.
2. (CHECK ONE) YOU ( ) WILL (✓) WILL NOT BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION.
   (CHECK ONE) YOU (✓) WILL ( ) WILL NOT BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
3. (CHECK ONE) THERE ( ) IS (✓) IS NOT AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. (If such obligation exists, then the amount of the current obligation is $_____.)
4. (CHECK ONE) THE RESTRICTIVE COVENANTS ( ) CAN (✓) CANNOT BE AMENDED WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR, IF NO MANDATORY ASSOCIATION EXISTS, THE PARCEL OWNERS.
5. RESTRICTIVE COVENANTS ("COVENANTS") HAVE BEEN OR WILL BE RECORDED GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.
6. YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
7. THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.
8. THESE DOCUMENTS ARE MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED.

This Homeowners' Association/Community Disclosure Summary shall be incorporated into and made part of the Contract for Sale and Purchase. Seller represents that the information set forth in this Disclosure Summary is accurate and complete.

_____ 12/31/10     _____
SELLER                          DATE         SELLER                    DATE

IF THIS DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THE CONTRACT FOR SALE, THE CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THIS DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THE CONTRACT SHALL TERMINATE AT CLOSING.

BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.

Receipt and acknowledgement of Buyer.

X_____ X 12-31-10   X_____ X 12-31-10
BUYER                  DATE          BUYER                  DATE

Form #1170                          (17)                          Rev. 07/04